1822.<br>WILLIAMS<br>v.<br>STORRS.

Order accordingly.

## WILLIAMS and others *against* STORRS and others.

Where an attorney or agent is authorized to sell land for the plaintiff, and to collect money on a bond and mortgage, &c. it is sufficient if he keeps the moneys received by him safely, and is ready to pay it over, on demand, to the party entitled to it. He is not chargeable with *interest* on the moneys of his principal, unless in default, or unless he has employed the money for the purpose of gain to himself.

A father of infant plaintiffs is not entitled, in that relation, to demand the money of the infants ; and where they reside out of the state, a *guardian* should be appointed here, in order to make a valid demand.

Nor has an administrator, appointed in another state, any authority here ; but, it seems, that a voluntary payment to an administrator, so appointed, would protect the party.

*ARTHUR MAGILL,* of *Middletown,* in the state of *Connecticut,* was owner of part of lot No. 15, in *Leyden,* in this state, containing 129 acres of land ; and was assignee of a bond and a mortgage of land in *Leyden,* executed the 20th of *October,* 1804, by *William Jenks,* one of the defendants.   By letter, dated the 19th of *June,* 1811, *M.* authorized the defendant, *Henry R. Storrs,* of *Whitestown,* in *Oneida* county, an attorney and counsellor at law, to collect the money due on the mortgage, and to cause the mortgaged premises to be sold, and if the land did not sell for enough to pay the debt, to buy in the land for *M.,* and

*Sept. 6th, and October 4th.*

1822.

WILLIAMS
v.
STORRS.

to sell it again; and also, to sell the 129 acres of land on credit, taking security, &c. The defendant, *S.*, as stated in his answer, thought it best for the interest of *M.*, not to foreclose the mortgage, but to give *Jenks* time; and he informed *M.* of the circumstances, but before any answer was received, *M.* died, to wit, on the 7th of *February*, 1812; and on the twentieth day of the same month, but before he heard of *M.*'s death, *S.* received from *Jenks* a payment of fifty dollars; and on the 20th of *March*, 1814, and the 4th of *April*, 1816, two other payments, amounting to 150 dollars, were made by *Jenks* to the clerk of *S.*, in his absence. The son of *M.* took out letters of administration on the estate of his father, in *Connecticut*, but no administration was ever granted in this state. In *April*, 1813, the defendant, *S.*, in the name of the administrator, contracted with *W. Felshaw*, one of the defendants, for a release of forty acres of the 129 acres; and received from *F.*, on the contract in full, 213 dollars and 62 cents; and the defendant, *S.*, continued to act as agent, under the direction of the administrator of *M.* In the distribution of the estate of *M.*, by the Court of Probates, in *Connecticut*, the 129 acres in *Leyden*, and the bond and mortgage, were assigned to the widow of *M.*; and she dying, afterwards, in *December*, 1812, the Court of Probates distributed the property to the four infant children of a deceased daughter, who, with the son, and two surviving daughters, and their husbands, are the plaintiffs in the cause. The bill, which was filed in *May*, 1821, prayed, that the defendant, *S.*, might discover the deeds and writings touching the lands, and deposit the same with the register, and that the mortgaged premises might be sold; and for the specific performance of the contract for the sale of the 40 acres to *F.*, on payment of the purchase money, with interest, and for general relief. The defendant, *S.*, advised the father of the infant plaintiffs, that it was necessary that they should have a guardian appointed for them in this state; and he refused to pay over

the monies received by him to the father, or to the adminis-  
trator of *M.*, alleging a want of authority in either of them ;  
and he absolutely refused to pay interest. He admitted,  
that in *October*, 1821, the administrator of *M.* drew an  
order on him, in favour of the father of the infant plaintiffs,  
for the moneys received from *Jenks* and *F.*, amounting to  
601 dollars and 97 cents, including interest, which he  
refused to pay. The defendant, *S.*, stated in his answer,  
that he received the moneys as the agent of *M.*, or his  
representatives ; and that they were not kept separate, but  
were received and kept, as all other moneys received by him  
as attorney are received and kept, and were paid out of the  
general mass of moneys in his hands, in the course of his  
payments, either as moneys collected, or for general ex-  
penditures on his own account ; and he denied that the  
moneys so received for *M.* were laid out, or invested or  
used in any operation of profit or speculation, or put at  
interest, or to any productive use whatever. That he has  
been always ready to account, when properly called upon,  
and is now ready to account and pay, in any manner the  
Court may direct ; but he objected to the demand of *inte-  
rest*, as unjust and unreasonable.

*September* 6, 1822. The cause was brought to a hear-  
ing this day.

*Van Vechten*, for the plaintiffs. He cited 2 *Esp. N. P.*  
702. 1 *P. Wms.* 142. 3 *Bro.* 41. 73. 384. 483. 1  
*Bro.* 375. 1 *Ves.* jun. 89. 13 *Ves.* 402. 1 *Ves.* 129.  
1 *Vern.* 196. 12 *Ves.* 402. 387. 10 *Ves.* 61. 3 *Caines'*  
*Rep.* 266. 9 *Johns. Rep.* 71. 2 *Johns. Ch. Rep.* 318.  
*Dickens' Rep.* 594. 4 *Johns. Ch. Rep.* 687.

*Storrs*, in person, and *S. Jones*, contra. They cited 1  
*Johns. Ch. Rep.* 508. 527. 620. 4 *Johns. Ch. Rep.* 303.

THE CHANCELLOR. The only question is, whether the

1822.

WILLIAMS  
v.  
STORRS.

defendant, *Storrs*, shall be charged with interest on the sums admitted by him in his answer to have been received.

On the 19th of *June*, 1811, *Arthur Magill* employed him by letter, and put into his hands a mortgage executed by *William Jenks*, and assigned by the mortgage to *Magill*, which the defendant, *S.*, was directed to put in suit, and if the land should not sell for money enough to pay the debt, *Magill* requested the defendant to buy in the land for *Magill*, and to sell it, payable partly in cash and partly on credit, by instalments, secured by a mortgage. *Magill* likewise requested the defendant to sell for him 129 acres of other land, on credit and security. These were the outlines of the instructions, but the letter concluded, by leaving " the whole management" to the defendant. The defendant states, that he did not deem it prudent to go on and enforce a sale of the mortgage, by foreclosing the equity of redemption, but judged it best to give time and indulgence to the mortgagor, as being most for the interest of *Magill*; and in the autumn of 1811, he communicated these facts to *Magill*, who resided at *Middletown*, in the state of *Connecticut*, and from whom he never heard again on the subject. *Magill* died on the 7th of *February*, 1812 ; and on the 20th of that month, and before the defendant had heard of his death, he received of *Jenks* 50 dollars ; two other sums of 100 dollars and 50 dollars, were paid by *Jenks* to the defendant, in 1814, and 1816, and which were received in the absence of the defendant from his office, and on behalf of the lawful representatives of *Magill*, who might be entitled thereto. A son of *Magill* administered on his estate, by letters of administration taken out in *Connecticut*, but no administration was granted under the authority of this state. The defendant, in *April*, 1813, contracted to sell 40 acres of the 129 acres, to the defendant, *Felshaw*, and he received part of the payment then, and the residue in 1814, amounting in the whole to 213 dollars and 62 cents. He continued to act as agent in respect to those

lands and the mortgage interest, under the advice of the
son and administrator of *Magill.* In the distribution of
the estate of *Magill,* the mortgage of *Jenks,* and the 129
acres of land, were set off by the Court of Probates in
*Connecticut,* to the widow of *Magill,* but she dying in
*December*, 1812, that property was, afterwards, in the
autumn of 1818, set off by the same Court to the four
plaintiffs, who are infants. The defendant, *S.,* advised the
father of the four infants to be duly appointed, under the
authority of this state, their guardian ; and he did not deem
it safe to pay those moneys, so received, either to the father
of the infants, or to the son and administrator of *Magill,*
because the one was not a duly constituted guardian, nor
the other an administrator under the authority of this state.
He admits, that the son and administrator drew an order
on him, dated *October* 16, 1820, for all the moneys so re-
ceived, with interest, and that he refused to pay for want
of due authority in the drawer, or to pay interest in any
event.

The father of the infant plaintiffs was not entitled, in his
relation of father, to demand the infants' money in the
hands of the defendant, and it was requisite that a guar-
dian should have been appointed here, to be enabled to
make a valid demand. (*Genet* v. *Tallmadge,* 1 *Johns. Ch.
Rep.* 3. *Morrell* v. *Dickey, id.* p. 153.) It is equally
well settled, that an administrator of an intestate's estate,
where letters of administration were granted out of the
state, has no legal authority over the intestate's effects
within this state. All his power over the estate is derived
from the Court that appoints him, and the appointment
does not operate, and is not recognised out of the jurisdic-
tion of that Court. The order of the administrator in
*Connecticut* was not binding, and could not have been en-
forced here ; and the defendant was not under any obliga-
tion in law to obey it, though, I apprehend, a voluntary
payment under it would have protected him. The cases

1822.

WILLIAMS
v.
STORRS.

on this point were reviewed in the case of *Morrell* v. *Dickey*.

There was not then, *stricto jure*, any default on the part of the defendant, in refusing to pay to persons not having authority to demand. He received the money, not strictly as a trustee, in confidence and without interest, but as an attorney, or agent, or bailiff, instructed to cause the land to be sold, in his discretion, and to collect and receive the money. It was sufficient, if he kept the money safely, and paid it according to the request of the party entitled to demand and receive. His duty was, to be ready to pay upon demand; and I think it would be too rigorous a doctrine, unless under very special circumstances, which do not exist in this case, to exact from an attorney, or agent, interest upon the moneys of their principal in hand, when they are not chargeable with any default, and are ready to pay when called upon for that purpose. If the agent had received moneys, and neglected, for a long time, to inform his principal of the fact, and wilfully suffered him to remain in ignorance that the debtor had paid to the agent, there would be equity in requiring the agent to pay interest, for here would be a case of default, and breach of duty. But there is no averment, in the present case, of a want of notice, and, therefore, none is to be presumed. So, if the agent had employed the money for the purposes of gain to himself, a ground might be laid for a charge of interest; and the question is, whether the admissions in the answer will warrant that conclusion. The defendant says, he received the moneys as agent of the representatives of *Magill*, and that, as the money was received from time to time, it was indiscriminately placed with his other moneys, received as attorney or agent, and not set apart or preserved separately from the mass of his funds. That since 1812, there has passed through his hands, probably, 30,000 dollars of moneys collected and received from others, as an attorney or agent, and that the moneys in

1822.

WILLIAMS
v.
STORRS.

question were received as he customarily receives all moneys passing through his hands, and of which no separate deposits or accounts are made or kept. That the moneys were paid away out of the general mass of moneys in his hands in the course of his payments, either as moneys collected, or on his general expenditures on his own account. He denies, however, that the same were laid out, or invested or used in any operation of profit or speculation, or put at interest, or to any productive use whatsoever; and he says, that he has ever been ready to account, when properly called upon, for the moneys so received, and is now ready to account and pay.

Upon these facts, I do not think the defendant can be made chargeable with any profit made out of the moneys he so received, nor with any breach of duty in not paying, before he was authoritatively called upon to pay, and, therefore, he ought not to be chargeable with interest. I shall, accordingly, so far correct the decree, recently pronounced in this cause, as to exempt the defendant, S., from interest on the 413 dollars 62 cents, which he received in the course of his agency, and, also, from the payment of costs.

Decree accordingly.