---

PRATT (FOGERTY v.). See Case No. 4,896.

PRATT v. The HEROINE. See Case No. 6,417.

PRATT v. The KENTUCKY. See Case No. 7,717.

PRATT (LIVINGSTON v.). See Case No. 8,417.

PRATT (MITCHELL v.). See Case No. 9,668.

## Case No. 11,376.

PRATT et al. v. NORTHAM et al.

[5 Mason, 95.] [1]

Circuit Court, D. Rhode Island.    June Term, 1828.

FEDERAL COURTS — JURISDICTION — SUIT BY LEGATEE—JUDGMENT IN STATE COURT—ADMINISTRATOR GUARDIAN—LIMITATIONS—PARTIES.

1. The courts of the United States, as courts of equity, possess jurisdiction to maintain suits in favour of legatees and distributees for their portions of the estate of the deceased, notwithstanding there may be, by the local jurisprudence, a remedy at law on the administration bond, in favour of the party. This class of cases is of concurrent and not of exclusive jurisdiction.

[Criticised in Pierpont v. Fowle, Case No. 11,-152. Cited in Mallett v. Dexter, Id. 8.988; Segee v. Thomas, Id. 12,633; Gould v. Gould, Id. 5,637; Payne v. Hook, 7 Wall. (74 U. S.) 430; Chapman v. Borer, 1 Fed. 275. Quoted in Rich v. Bray, 37 Fed. 274. Cited in Domestic & Foreign Missionary Soc. P. E. Church v. Gaither, 62 Fed. 423; Walker v. Brown, 11 C. C. A. 135, 63 Fed. 209.]

[Cited in Wallace v. Harris, 32 Mich. 392.]

2. A judgment in the court of probate of a state, is not conclusive, where it has been obtained by fraud. The settlement of an administrator's account in the probate court, procured by fraud, is not conclusive.

[Cited in Mallett v. Dexter, Case No. 8.988; McDermott v. Copeland, 9 Fed. 538; Pulliam v. Pulliam, 10 Fed. 56.]

[Cited in Williams v. Herrick (R. I.) 25 Atl. 1,100; Adair v. Cummin, 48 Mich. 378; Holden v. Meadows, 31 Wis. 290. Cited in brief in Maloney v. Dewey, 127 Ill. 398, 19 N. E. 848. Cited in Phillips v. Kuhn, 35 Neb. 195, 52 N. W. 881.]

3. A bill for a discovery of assets lies in equity, notwithstanding a remedy at law.

[Cited in Pierpont v. Fowle, Case No. 11,152.]

4. If an American administrator procure an auxiliary administration in England, and receives from the administrator there, the assets collected under such administration, he is chargeable here for the assets so received as administrator.

5. If an administrator be at the same time guardian of the legatees or distributees, and receive foreign assets as abovesaid, and do not inventory or account for them, or procure any settlement of them in the probate court, and a distribution of them according to law, he will be deemed to receive them as administrator, and not to retain them as guardian. Some act or admission, showing a retainer as guardian, as an accounting in the probate office as guardian for the same, is necessary to exonerate him from liability as administrator.

[Cited in Bell v. People, 94 Ill. 237; Board of Education of Spencer Dist. v. Cain, 28 W. Va. 770; Morrow v. Peyton, 8 Leigh (Va.) 76; Paxton v. Steele, 11 Hans. [86 Va.] 314, 10 S. E. 1. Cited in brief in Smith v. Lamberts, 7 Grat. 141; Swope v. Chambers, 2 Grat. 321, 322.]

6. The sureties of an administrator are liable, in the same manner as their principal, for assets so received, until some act or admission establishing a retainer as guardian. A fortiori the rule is so, where the administrator has never admitted the receipt of such assets as

---

1 [Reported by William P. Mason, Esq.]

guardian or administrator; but fraudulently concealed the fact from all the parties in interest.

[Cited in Ridenbaugh v. Burnes, 14 Fed. 94.]
[Cited in Adair v. Cummins, 48 Mich. 378, 12 N. W. 497.]

7. The statute of limitations binds courts of equity as well as law, in cases of concurrent jurisdiction; and sometimes, by way of analogy, binds equitable titles.

[Cited in Hall v. Russell, Case No. 5,943.]
[Cited in Fowler v. True, 76 Me. 45; Randall v. Peckham, 10 R. I. 546; Webster v. American Bible Soc., 50 Ohio, 11, 33 N. E. 297.]

8. The statute of limitations of Rhode Island, of suits brought against executors and administrators, is a good bar in equity as well as at law.

[Cited in Sugar River Bank v. Fairbank, 49 N. H. 140.]

9. Where an administrator and his sureties die, a suit brought by a legatee or distributee to recover for the default of the original executor in not paying the same, must be brought against the administrator of the executor, or the executor of his sureties, within three years after the last administration is taken out; otherwise it is barred

10. Who are proper parties to be made in such a case?

[Cited in Miner v. Aylesworth, 18 Fed. 201.]

Bill in equity. The facts of the case were as follows: Adam Ferguson of Newport, Rhode Island, made his will, bearing date April 12, 1797, giving all his property, real and personal, to his only child, Isabella Ambrose, and appointing her executrix to his will. Some time in July, 1800, said A. Ferguson died, (his daughter Isabella having died before him,) leaving his will unrevoked. By the laws of Rhode Island (St. 1798, p. 282), when any devisee of personal or real estate dies before the testator, leaving lineal descendants, such descendants shall take under the will in the same manner as the devisee would have done, had he or she survived the testator. Isabella Ambrose left two children, Ann F. Pratt, and Robert J. Ambrose, plaintiffs in the present bill. On the 14th of July, 1800, the will of A. Ferguson was approved by the court of probate of the town of Newport. On the 21st of the same July, Robert M. Ambrose, the husband of the said Isabella, and the father of the said Ann F. and Robert J., was appointed administrator on the estate of A. Ferguson, with the will annexed, and gave bond according to law, with William Langley and Israel Ambrose as sureties. On the 4th of August, 1800, an inventory of the personal estate of the said A. Ferguson was returned to the court of probate, amounting to $311.60. On the 9th of May, 1808, R. M. Ambrose rendered his account of administration, bearing date April 25th, 1801, which was received, examined, and allowed by the court of probate. The bill charges, that the decree of the court of probate allowing this account was obtained by fraud. This account credits the estate of A. Ferguson with the amount of the inventory, being $311.60, and exhibits a balance in favour of the administrator against the estate, of $636.83. This is all the

inventory or account of the property of A. Ferguson, ever rendered by the said R. M. Ambrose.

A. Ferguson, at the time of his death, had a balance of account due him from the firm of Mitchell & Cockburn, who were established, and transacting business, in the city of London. This firm was composed of George Hanbury Mitchell and James Cockburn, was formed in January, 1800, and was dissolved in September, 1802, by the death of Cockburn. Upon the death of Cockburn, Mitchell continued the business of the firm, under a new firm, composed of himself and others, under the style of Mitchell, Lindsay, & Co. and the balance due A. Ferguson from Mitchell and Cockburn was transferred to the firm of Mitchell, Lindsay, & Co. A. Ferguson, at the time of his death, also owned stock in the English funds, which stood in the name of William Innes, merchant, of the city of London. Said Innes died before A. Ferguson, and George Hanbury Mitchell, James Innes, and John Nicholl, were the executors of his will. On the 26th of June, 1801, R. M. Ambrose wrote Innes and Mitchell, executors, stating the decease of A. Ferguson, that he was administrator on his estate, with the will annexed, &c., and requesting information of the balance due, and the amount of the stock, &c. To this letter, Mitchell & Cockburn reply, under date of September 3, 1801, in which they state the amount of the balance in their hands, also the value of the stock, and advise, that R. M. Ambrose should send out a power to some one in England to take letters of administration; that such person being appointed administrator on the effects in England, would be authorized to receive the balance, and the proceeds of the stock or the stock itself, and to pay it over to him, R. M. Ambrose. On the 21st of December of the same year, R. M. Ambrose sent out a joint and several power to Mitchell & Cockburn to take out letters of administration for him in England, and requested, that the executors of William Innes would transfer the stock to the names of Mitchell & Cockburn, which was accordingly done by the two surviving executors, George Hanbury Mitchell and John Nicholl.

Mitchell & Cockburn supposed, that Isabella Ambrose had died after her father. Under this impression, letters of administration, bearing date February 27, 1802, were granted to James Cockburn, one of the firm of Mitchell & Cockburn, on the property of A. Ferguson, with the will annexed, and on the property of Isabella Ambrose, all for the use of R. M. Ambrose. On the 23d of February, 1803, this stock was sold by Mitchell for £374. 4s. 3d. (Cockburn having died September, 1802;) and this sum was placed to the credit of R. M. Ambrose in the hands of Mitchell, Lindsay, & Co. by him the said Mitchell. The balance due from Mitchell & Cockburn, and transferred to Mitchell, Lindsay, & Co. as before stated, together with the proceeds of the

stock, amounted to the sum of £644. 12s. 8d., and was drawn for by R. M. Ambrose by bills of exchange, from January 28, 1803, to October 16, 1804. The balance which was transferred from Mitchell & Cockburn, to Mitchell, Lindsay, & Co. was increased in the hands of the latter, by the receipt of the dividends on the stock, until the same was sold. The transfer of said balance to Mitchell, Lindsay, & Co.; the transfer of said stock to Mitchell & Cockburn, by the executors of William Innes; and the subsequent sale of the same by Mitchell; were all done by the direction and at the request of R. M. Ambrose.

R. M. Ambrose, on the 6th of April, 1801, was appointed guardian of the said Ann F. Pratt and Robert J. Ambrose, and gave bond in the penal sum of $4,000 for the faithful performance of the trust, but never rendered any guardianship account whatever, and the sureties on this bond are both dead and left no estate. R. M. Ambrose is dead, leaving no property, and no administration has ever been taken on his estate; Israel Ambrose, one of the sureties on his administration bond, is also dead, leaving no property, and no administration has ever been taken on his estate. neither of them leaving any estate to administer upon. Some time in 1817, William Langley, the other surety on the administration bond of R. M. Ambrose, died, leaving a large real and personal estate, which he disposed of by will. Stephen T. Northam and Sarah Langley, defendants in this suit, are his executors. The will was approved July 9, 1817, the executors accepted of the trust, and gave bond according to law. The will contains the following provisions: "The whole of my bank stock shall be kept sacredly for the purposes expressed in this my last will and testament, and to that end, if my personal estate over and above said bank stock last mentioned, should be insufficient for the payment of my just debts and the expenses of settling my estate in manner provided by law, and for the raising and disposition of said sum of $3,000 as herein above ordained, then my will is, and I hereby authorize and order my said executors, to make sale of so much of my real estate, at their discretion, as may be necessary to make up the deficiency, and the proceeds thereof to apply for the purpose of making up said deficiency; and to execute and deliver all necessary deeds and grants of the said real estate, so to be sold by them as aforesaid. Provided, however, that if it should be necessary to make sale of any of my real estate for the purposes aforesaid, that part thereof now occupied by my said daughter Sarah R. Ambrose and her husband shall not be sold, excepting, that the other parts of my real estate should prove deficient for the purposes aforesaid." The Sarah R. Ambrose herein mentioned, was the second wife of said R. M. Ambrose, and the daughter of the said William Langley. The executors possessed themselves of ample personal estate, exclusive of the bank stock, to pay all the debts of the testator, including the debt due the plaintiffs, and expenses of settling the estate. The said Ann F. Pratt became of age in March, 1818; the said Robert J. Ambrose, November, 1820; and no evidence or information of the property in England belonging to Adam Ferguson, and received by R. M. Ambrose, ever could be obtained by the plaintiffs, until October, 1825, although much expense had been incurred for that purpose, and a commission had been sent to Mr. Aspinwall, to take the testimony, in 1817, to be used in a suit in the state court, who returned, that after making the most diligent inquiry, he could discover no traces of the property.

The bill charged, that all the debts of William Langley, except the debt due the plaintiffs, were paid, and prayed for an account of the personal estate of William Langley, and that if the same, exclusive of the bank stock and legacy of $3,000, was sufficient to pay the plaintiffs, that the executors might be decreed to pay accordingly; or in case of a deficiency of personal estate, that the executors might be decreed to sell enough of the real estate to make up the deficiency; and for general relief.

Mr. Pearce and Mr. Greene, Dist. Atty., for plaintiffs.

Hunter & Hazard, for defendants.

STORY, Circuit Justice. This is a bill in equity, brought under the following circumstances. The plaintiffs, Ann F. Pratt, (wife of the plaintiff, Thomas Pratt,) and Robert J. Ambrose, are children of Isabella Ambrose deceased, and her only lineal descendants. In April, 1797, her father, Adam Ferguson, made his will, and after payment of his debts &c. he devised and bequeathed all his real and personal estate to the said Isabella, and made her executrix of his will. She died before her father, leaving her children above named. Her father then died, viz. in 1800, and in July of the same year, Robert M. Ambrose, the husband of Isabella, and father of her children, took administration with the will annexed of Ferguson's estate, and gave a bond to the court of probate in the usual form, for a faithful administration of the estate. The sureties upon the probate bond were Israel Ambrose and William Langley, both of whom are since deceased. Langley made his will, and appointed the defendants, S. T. Northam and Sarah Langley, his executors, who took upon themselves the trust. The other defendants named in the bill, are the present judges of the probate court of Newport, who, as successors in office of the former judges, are regularly entitled to the custody and controul of the bond, and to institute proceedings thereon, for the due settlement of the estate. The reason assigned in the bill for making them parties is, that they have confederated and combined with the other defendants, to

deprive the plaintiffs of the benefit of the bond, and have refused to deliver the same, or an authenticated copy thereof, to the plaintiffs, though often requested and urged so to do. No proceedings seem however to have been had against them, and no decree is now sought against them.

By the laws of Rhode Island, "when any child, grandchild, or other relation, having a devise or bequest of real or personal estate, shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, in the same way and manner such devisee would have done, in case he (or she) had survived the testator." St. 1798, p. 282, § 6. Consequently the children of Isabella are entitled to take the same as their mother would have done. The bill charges, that Robert M. Ambrose, after so taking administration, received sundry sums of money belonging to the estate, and particularly some money due to Ferguson in England, where he caused an auxiliary administration to be taken out, under which the money was received for, and by, him. It farther charges, that he never brought into account, or in any proper manner administered upon, the assets so received, but fraudulently concealed the receipt of the same from the court of probate; that in May, 1808, he settled an account of his administration in the probate court, without giving any credit for such assets, and there charged a balance due to himself of $636.83, which account was duly allowed and ordered to be recorded. It farther charges, that the decree of allowance was procured by fraud. It then proceeds to state, that Israel Ambrose, the surety, died intestate, leaving no estate, and that no administration has been granted on his estate. That R. M. Ambrose, (the administrator,) in September, 1815, died intestate, leaving no estate, and that no administration has been granted on his estate. That in June, 1815, William Langley (the other surety) died, leaving a large estate, having first made his will, and that S. T. Northam and Sarah Langley are his executors, and have possessed themselves of a large estate, more than sufficient to pay all his debts, and to pay the plaintiffs, &c. And the bill insists on the right of the plaintiffs to receive payment, from Langley's estate, of the sums due them, in virtue of the bequest to their mother by Adam Ferguson. And a discovery is prayed for, and a decree of payment, out of the personal assets, of the sums due them as aforesaid, and that if they are insufficient, out of the real estate of Langley, which by his will is specially charged with payment of his debts. There is also a general prayer for relief.

Many of the facts, stated in the will, are admitted by the answer of Northam and Langley, executors; and indeed the other facts put in issue, seem substantiated, far enough to lay a ground work for relief, if the plaintiffs are otherwise entitled to any, upon a survey of the whole merits, and according to the principles of a court of equity. But a very important fact disclosed in their answer is, that in April, 1801, Robert M. Ambrose, the administrator, took out of the probate court letters of guardianship upon the persons and estates of his children, the plaintiffs, who were then minors, and did not come of age until after his death. He gave bonds in due form of law, in the penalty of $4,000 with sureties, for the faithful performance of his duties as guardian. The bond, by the laws of Rhode Island, like that in cases of administration, is taken in the names of the judges of probate, for the time being, payable to them and their successors in office. The sureties on the guardianship bond are both dead; one of them leaving his estate insolvent; and the other leaving an estate inventoried at $1,082.90, of which no administration account has yet been settled. No guardianship account was ever rendered by R. M. Ambrose, the guardian, to the probate court; and the minors came of age in 1818 and 1820. Upon the settlement of the administration account of R. M. Ambrose in 1808, a quietus in common form was granted to him by the court of probate.

The answer of the executors sets up several matters of special defence, which I shall by and by consider in the progress of the present judgment.

Upon this posture of the case, presenting somewhat of novelty in its outlines, several questions have been argued at the bar, upon which, perhaps, it might not be necessary to pass an ultimate judgment, if it were not of some importance to close this unpleasant controversy. I will proceed, therefore, in the first instance, to consider the objections insisted on by the defendants' counsel, reserving the consideration of some others, until they shall have been first disposed of.

The first objection taken, is to the jurisdiction of this court, as a court of equity, to entertain the suit, for two reasons. The first is, that the plaintiffs have, if entitled to any, a complete remedy at law, upon the administration bond, according to the laws of Rhode Island. The second is, that by the same laws, the decree of a quietus operates as a final and conclusive bar to any farther proceedings upon the bond. The last reason is founded on the 25th section of the act respecting intestate estates (St. 1798, p. 304), which enacts, "that the settlement of the accounts of any executor, administrator, or guardian, by the court of probate, or in case of appeal, by the supreme court of probate, shall be final and conclusive on all parties concerned therein, and shall not be subject to re-examination in any way or manner whatsoever." This language cannot be considered as giving any higher or stronger efficacy to a probate decree, than a judgment possesses at the common law.

Upon general principles, fraud avoids the

latter, and the same doctrine has been uniformly applied to all instruments and proceedings, however solemn. The cases of Sims v. Slocum, 3 Cranch [7 U. S.] 307, and Ammidon v. Smith, 1 Wheat. [14 U. S.] 447, admit the general principle, and turn upon distinct considerations. There is the more stringent reason for applying the doctrine in the present case, because the administrator, at the time of the settlement, united in himself also the character of guardian of the plaintiffs, and as minors, they had no means of redress except through him. To say, therefore, that his own fraud should, under such circumstances, bind them, would be to subvert the very foundations of justice. The money received by him through the instrumentality of the auxiliary administration in England, was clearly assets in his hands, of the testator, Ferguson, and ought, as such, to have been accounted for in his administration account, settled in 1808. The omission so to do was a plain departure from his duty, a breach of the condition of his probate bond, and an inexcusable fraud.

As to the other ground, it is true, that by the laws of Rhode Island (St. 1798, pp. 307–309, &c.), creditors, devisees, and legatees, may have remedy by a suit commenced for their use on the administration bond, in the name of the court of probate, where there is a mal-administration; and legatees also have a direct remedy at law against the administrator, for their legacies, whether they be specific, or general, or residuary legatees. In many cases, the remedy, thus provided, may be adequate and complete. In many, however, the statute provisions do not reach the whole mischief. They are not adapted to a case like the present. They presuppose, that the debt or demand of the party has been already ascertained by a judgment at law on a decree in the probate court; that proceedings for this purpose have been had while he was living; and also for the most part, that he is personally sued on the administration bond. In a case circumstanced like the present, I am by no means satisfied, that there is any plain, adequate, or complete remedy at law under the statutes of Rhode Island. They do not seem to contemplate such complicated and special cases.

But if it were otherwise, the conclusion to which the objection seems to arrive, would not be attained. It has been often decided by the supreme court, that the equity jurisdiction of the courts of the United States is not limited or restrained by the local remedies in the different states; that it is the same in all the states; and is the same, which is exercised in the land of our ancestors, from whose jurisprudence our own is derived. Robinson v. Campbell, 3 Wheat. [16 U. S.] 212; U. S. v. Howland, 4 Wheat. [17 U. S.] 108, 115.

There are many cases where there exists a concurrent jurisdiction in courts of law and equity. Such are cases of account, of fraud, of partition, of dower, &c. See Smith v. McIver, 9 Wheat. [22 U. S.] 532; Coop. Eq. Pl. 28. The existence of such legal remedy has never been supposed to oust the jurisdiction of a court of equity. On the contrary, the jurisdiction has been constantly maintained. And a fortiori, where the original remedy exists in equity, as in cases of fraudulent affirmations of credit, and of legacies, the subsequent assumption of jurisdiction at law ought not to be held to oust that which has already vested. It has been for a great length of time settled, that in cases of the administration of assets, courts of equity have a concurrent jurisdiction with courts of law. The original ground seems to have been, that a creditor or other party in interest, had a right to come into chancery for a discovery of assets; and being once rightfully there, he should not be turned over to a suit at law for final redress. See Jesus College v. Bloom, 3 Atk. 262, 263; Yates v. Hambly, 2 Atk. 360, 363. And for the purposes of complete justice, it became necessary to conduct the whole administration and distribution of the assets under the superintendence of the court of chancery, when it once interfered to grant relief in such cases. This whole subject is investigated with great care and clearness by Mr. Chancellor Kent, in Thompson v. Brown, 4 Johns. Ch. 619, 631, &c., and his elaborate judgment spares me the necessity of any attempt farther to illustrate or confirm it. The plaintiffs, then, would be here rightfully in court, if for no other purpose, for a discovery of assets in the hands of the executors of Langley. The jurisdiction too might be fortified by considerations derived from the doctrines of this court, in U. S. v. Aborn [Case No. 14,418].

It has also been suggested, that the present is a bill for discovery and relief, and that as no discovery has been obtained, no relief can be granted. And the language of the chief justice in Russell v. Clarke's Ex'rs, 7 Cranch [11 U. S.] 89, has been relied on for this purpose. That was a case where the remedy was exclusively at law; and the discovery sought was that alone, which could give jurisdiction to a court of equity. It was, as a bill of discovery, wholly unproductive, and therefore properly dismissed. Here, the jurisdiction was not exclusively at law; and the discovery of the assets has been complete. The executors answer as to them; and only deny possession of other vouchers, papers, and documents, belonging to the estate of Ferguson or his administrator.

Then again it is objected, that here there is no sufficient charge or proof of fraud. Certainly there is none proved against the present defendants; they are innocent, and so was Langley, their testator. But there is a direct charge in the bill, that the decree of the court of probate in 1808 was obtained by the fraud of R. M. Ambrose, the administrator, which, as I have already intimated, is sufficiently established. And if there were

no actual fraud, still if the assets have been wrongfully withheld from the representatives of the legatee, so that the administrator would be liable therefor, it would be difficult to perceive how an omission to account for them would escape from the imputation of being a breach of the administration bond. There is certainly no pretence to say, that the court of probate participated in the fraud; and if the judges of that court had so participated, and in their judicial character sanctioned it, I am far from asserting the least right to controul, or overreach, or review their judicial acts. But it is unnecessary to touch such a point. It would be an indecorum to that court, far removed from my habits and feelings, to discuss what might be the possible effects of their misdeeds, when there is not the slightest evidence to bring into suspicion the purity or fidelity of their judgment.

Another objection is, that the assets fraudulently suppressed were received after the administrator was appointed guardian, and therefore might properly be considered as received on guardianship account. It appears to me, that this objection is not supported either in law or fact. The administration in England was granted professedly at the request, and upon the authority, of the American administrator. It was auxiliary to the American administration; and the proceeds were not only drawn for by the American administrator, but were received by him, as assets of his testator. It is true, that the English administration was granted upon the supposition, that Isabella survived her father; and that her husband was entitled to the beneficial interest in the legacy as her representative. But this does not vary the legal result, for the money received was clearly assets. It is an entire mistake to suppose, that the Rhode Island laws (see St. 1798, pp. 276, 294, 295) in force, at this period, do not authorize the administrator there to receive any debts or property which, at the time, were not locally due or existing, within the state. Whatever property was received by him as belonging to the testator, and as part of his assets, he was bound to administer, wherever it might have been at the time of the death of the latter. The condition of the bond contains a clause, that he shall well and truly administer all the goods, chattels, rights, and credits of the testator, which at any time shall come to his hands and possession. It is one thing, whether he could, without a new administration, recover by suit any debts or property in a foreign country; and quite another thing, when he obtains a possession of them, whether he must not account for them as assets. A voluntary payment by a debtor to a foreign administrator is a good discharge of the debt; and the latter holds the same as assets. See Williams v. Storrs, 6 Johns. Ch. 353; Doolittle v. Lewis, 7 Johns. Ch. 45. This can only be upon the principle, that the administrator may

rightfully receive them as assets in virtue of his authority as administrator, and give a competent discharge.

What, then, was the duty of the administrator upon the receipt of these assets? It was plainly his duty to inventory them, and account for them, as part of the testator's estate in his hands and possession; and upon the settlement of his accounts in the probate office, he ought to have procured a decree directing a distribution of the balance between his wards, in equal moieties. Had he so done, there would have been no question, upon the principles settled by this court in Taylor v. Deblois [Case No. 13,790], that the administration bond would have been discharged, and by operation of law he would have been deemed to possess the balance, in his character as guardian.

This leads me to the consideration of another objection of a more grave complexion. It is, that, though the property was received by R. M. Ambrose in his character as administrator; yet as he was at the same time guardian of the parties entitled to the proceeds upon a decree of distribution, by the mere operation of law, and without any act done by him, it was instantaneously transferred to his account as guardian, and so all responsibility under the administration bond is extinguished. If any act had been done by R. M. Ambrose, by which he elected to pass the property to his guardianship account; or if he had charged himself with it in the probate court as guardian, there would be little difficulty in adopting this conclusion. The real question on this part of the case is, whether, without any such act, without any admission of assets, or any admission of responsibility as guardian for the amount, a court of equity is bound to make that application for the party, which he has not made for himself. In this respect, it differs materially from Taylor v. Deblois [supra], and therefore is not necessarily governed by it. In that case the court said: "The general principle in cases of retainer is, that where the party unites in himself, by representation or otherwise, the character of debtor and creditor, inasmuch as he cannot sue himself, he is entitled to retain, and the law will presume a retainer in satisfaction of the debt, if there are assets in his hands." I see no reason, upon a review of the authorities, to doubt the accuracy of this statement; and it is supported by Burnet v. Dix. 1 Rolle, Abr. "Executors," (L.) par. 3, pl. 45. 2 Brownl. & G. 50, and Woodward v. Lord Darcy, 1 Plowd. 184. See Toll. Ex'rs, bk. 3, c. 3.

Ordinarily, such a presumption of retainer by way of satisfaction, may properly arise, because the party may be presumed to do his duty, and to elect to have payment made, of any debt due to him by representation or otherwise, in consonance with his duty. But such a presumption may be rebutted by circumstances, or controlled by the acts of the party. In most of the cases of retainer, the

party avails himself of his right by plea or otherwise; or it is made available by some act of his representative. And there is no presumption of an intentional breach of duty, or of an abandonment of the right of retainer. But in cases, like the present, where the rights of third persons are concerned, as of the sureties on the administration bond. and of the sureties on the guardianship bonds, a distinction may properly arise. Some act or election to hold the property in a different character from that in which it is received, may justly be insisted on, before the responsibility is shifted from one class of sureties to the other. Besides, here the administrator never admitted the assets to be in his hands. He held them secretly as his own, without acknowledgment, and settled his probate account without any admission of them. If he meant to apply them to the guardianship account. his plain duty was, in the settlement of 1808. to have credited the estate of Ferguson with the amount, and thus discharged himself as administrator, by charging himself as debtor on the guardianship account. His omission to do this appears to me to afford strong presumption, that it never was his intention to pass the proceeds to the guardianship account. And unless such was his intention, this court cannot now, upon principles of law, direct it to be done. He had a right to hold the property as administrator, until a settlement in the probate office, if such was his choice; and at all events as between the sureties to the different bonds, there is no ground upon which the court can say, that the law has changed the character. on which the assets are to be accounted for, since they were received. I cannot but have a strong suspicion, that the real intention of the party was, silently to appropriate the proceeds to his own use, in the same way as he would have been entitled to do, if his wife Isabella had survived her father, and not have died before him. The form in which the administrations are taken out in England, demonstrates a studious desire to hold up the impression. that Isabella died after her father, and that her husband was her sole legal representative as to this property. The mistake could hardly have found its way into the administration by mere accident. If it did, however, it does not change the posture of the inferences deducible from the other facts.

No case has been cited, which comes up to the present in its circumstances. The nearest approach, which I have met with, is the case of Weeks v. Gore, cited in Mr. Cox's note B to 3 P. Wms. 184. But there, though the creditor-administrator had made no election to retain his debt during his life, it was presumed, that he intended to pay his own debt first out of the assets, and his executors set up the right of retainer accordingly.

It appears to me, that in the present case there is no ground upon which the court can say, that by operation of law, or otherwise, the assets have passed from the administration account to the guardianship account.

Another ground of defence, which is relied on in the answer, and has been strenuously argued at the bar, is the statutes of limitations of Rhode Island. The lapse of time, too, since the giving of the administration bond, is relied on, to establish a presumptive extinguishment of liability under it. It may well be doubted, under the circumstances of this case, where there has been a fraudulent concealment of the assets, the existence of a long minority, and as far as the evidence goes, an entire ignorance on the part of the minors of their own rights, and of the facts leading to them, whether the mere lapse of time ought to furnish any bar to relief in a court of equity, without some other controlling equities on the part of the defendants to fortify it. But this need not be decided, for reasons hereafter stated.

The bar under the statutes of limitation is twofold: (1) It relies on the common statute (St. 1798, p. 471) limiting personal actions, and especially actions on the case, to six years. This statute is, for the most part. a transcript of the statute of 21 Jac. I. c. 16. Upon this part of the defence, it is unnecessary to say more than that the present suit is brought to enforce a right growing out of a bond or specialty, and is not, either in terms, or by implication, an action within the scope of that statute.

The other statute relied on, is the act for limiting suits against executors and administrators. St. 1798, p. 300. That act provides: "Nor shall any action be brought against any executor or administrator in his said capacity, unless the same shall be commenced within three years next after the will shall be proved, or administration shall be granted; provided such executor or administrator shall give notice of his appointment," &c. Now the defendants aver due notice of their appointment according to the statute, and that more than three years have elapsed since they took the administration upon themselves. The bar, then, is complete, by the express language of the statute. Why then should it not avail in a suit in equity, as it most assuredly would in a suit at law? It is said, in the first place, that the statute of limitations does not bind courts of equity. That position, certainly, cannot be maintained in the broad extent in which it is stated; for in cases of concurrent jurisdiction it is clear, that courts of equity are bound by the statute equally with courts of law. That was the doctrine of Lord Redesdale in Hovenden v. Lord Annesley, 2 Schoales & L. 607, 630, and Mr. Chancellor Kent, in Kane v. Bloodgood, 7 Johns. Ch. 90. There are other cases, not of concurrent jurisdiction, in which the statute of limitations is applied by courts of equity by way of analogy to the law. in which courts of equity follow the law, and

give effect to its regulations upon equitable titles. Bond v. Hopkins, 1 Schoales & L. 413, 428; Cholmondeley v. Clinton, 2 Jac. & W. 1; Kane v. Bloodgood, 7 Johns. Ch. 90, 110; and Murray v. Coster, 20 Johns. 576, 582,—expound and illustrate the reasons of the doctrine with great ability. In this last class of cases, equitable exceptions may well be admitted and justified, because the bar is furnished by the court itself, and stands upon no positive legislation.

Now, in the present instance, the suit is strictly an action against the executors, and it is in a case where the foundation laid, as against them, rests solely on a bond, which is suable at law. Independent of that bond no contract exists, by which they are bound; and no equity is stated in the bill against them or their testator, except the naked obligation arising from the suretyship of the latter. It is strictly a case, therefore, as to them, of concurrent jurisdiction.

But it is said, that here is a case of fraud, and that fraud, even at law, constitutes a good exception to the statute of limitations; and a fortiori has been often admitted in equity. This, in a general sense, is true as to the common statute of limitations. But then the fraud must be the fraud of the party, setting up the bar of the statute. This statute of limitations, as to executors and administrators, is not created for their own security or benefit; but for the security and benefit of the estates, which they represent. It is a wholesome provision, designed to produce a speedy settlement of estates, and the repose of titles derived under persons who are dead. If this statute could be avoided by any fraud, (on which I give no opinion,) it must be a fraud of the executors or administrators themselves, and not of third persons, with whom they have no connexion or privity. There is no pretence of any such fraud in this case on their part, or the part of their testator. All of them are innocent, both in fact, and in construction of law. How, then, can the fraud of a third person avoid a plea of this nature? It is also material to state, that if fraud be set up to a bar of the statute, the fraud so operating should be stated in advance in the bill, as an avoidance of it, so that thereby the fact may be put in issue. It is not sufficient to prove such a fraud in evidence, for the decree must be not only secundum probata, but also secundum allegata. If the plea is nakedly pleaded, and the bill does not set up the fraud, to avoid it, nothing is in issue but the truth of the plea itself.

If then the debt be barred, and is no charge on the executors, it can be no charge on the estate of the testator, either real or personal. It falls by its own infirmity, and attaches to nothing. If a testator charges his lands with payment of his debts, it is only with debts which are subsisting, and may be enforced against his estate, and not with debts not admitted, nor capable of being enforced against his assets. The trust is coextensive with the subsisting debts, and dies with them. See Burke v. Jones, 2 Ves. & B. 275; Fergus' Ex'rs v. Gore, 1 Schoales & L. 107, 109.

I may add, that in Massachusetts, where a like statute exists, the uniform construction has been, that the lapse of the prescribed term extinguishes the debt, so that even a subsequent acknowledgment by the executor or administrator will not revive it. Dawes v. Shed, 15 Mass. 6; Emerson v. Thompson, 16 Mass. 429; Thompson v. Brown, Id. 172. And in such case, a judgment against the administrator himself does not bind his sureties in a suit brought on the administration bond; but the extinction of the debt may be set up by them as a bar thereon. The obvious policy of the statute well warrants the conclusion indicated by these decisions.

The court has thus far travelled through the points made and argued at the bar. But if the difficulty last suggested were not insuperable, there would remain for consideration a very important point, and that is, whether all the proper parties for a decree are before the court. The doubt with me is, whether there could be any decree, unless an administrator of R. M. Ambrose were before the court. His accounts as guardian have never been adjusted; nor, so far as respects the assets now in controversy, has there been any allowance or settlement of the charges accruing from the getting in of those assets. Yet it is obvious, that no decree could be equitably had against the executors of Langley, except for such a balance as should be due them on a settlement of both of their accounts. The court might, in consideration of the insolvency of R. M. Ambrose, and the want of an administration on his estate, get over the difficulty of refusing relief against a surety without bringing the principal before it, with a view to contribution over. But when it cannot render any just decree without the liquidation of demands, which cannot be brought before the court, without an administrator being appointed, can it be, that it ought to render a decree against an innocent surety, which it has no means of ascertaining to be founded either in law or equity? At present, the objection strikes me as very cogent, and well deserving of grave debate.

Upon the whole the bill must be dismissed. Bill dismissed accordingly.

———

PRATT (ORME v.). See Case No. 10,578.

PRATT (POLLOCK v.). See Case No. 11,256.