## Shakespeare, Administrator, &c., *versus* Fidelity Insurance, Trust & Safe Deposit Company.

1. United States bonds deposited by a citizen of another state, in Pennsylvania for safe-keeping, upon a special certificate of deposit, transferable by endorsement with the approval of the company. and upon the surrender of which the bonds are to be returned to the depositor, do not constitute, upon the depositor's death, a part of his estate within this Commonweath.

2. If, in such case, an executor of a deceased depositor duly qualifies in the foreign domicile of said depositor, the person with whom the bonds are deposited is justified upon the surrender of the receipt, in giving them up to such executor, notwithstanding the provisions of the Act of March 15th 1832, § 6, Pamph. L. 136.

February 7th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON. TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county* :   Of January Term, 1881, No. 49.

This was an action of trover and conversion by James H. Shakes-

peare, administrator *de bonis non, cum testamento annexo*, of the estate of John B. Ackley, deceased, against The Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, for certain United States coupon bonds deposited with the defendants by the testator in his lifetime for safe-keeping, on special certificate of deposit.

Upon the trial, May 28th 1880, before ALLISON, P. J., by agreement of the parties, the jury found a special verdict, setting forth the following facts :—

John B. Ackley, a surgeon in the United States Navy, died at Pensacola, Florida, in September 1874, leaving a last will and testament upon which letters testamentary were duly granted by the surrogate of Burlington county, New Jersey, to Ransom Rogers, one of 'the executors named therein, on December 16th 1874, the other executor having renounced. Mr. Ackley left surviving him a wife and two children, who resided in Burlington, New Jersey, where the testator was domiciled at the time of his death. Ransom Rogers, the said executor, was then and has since continued to be a resident of Philadelphia. He entered upon the discharge of his duties without being required to give security—security by the laws of New Jersey not being in such case demandable—and subsequently filed an inventory and appraisement of the estate of Mr. Ackley with the surrogate of Burlington county, New Jersey.

At the time of his death Mr. Ackley was the owner of a number of United States 5-20 coupon bonds, of the face value of $17,400, which he had deposited from time to time for safe-keeping with the defendants, receiving certificates of deposit therefor in the following form.

THE FIDELITY INSURANCE, TRUST AND SAFE DEPOSIT COMPANY.

No. 11,702.          Philadelphia, August 6th, 1873.

*This is to certify* that J. B. Ackley, M. D., has deposited with the Fidelity Insurance, Trust and Safe Deposit Company of the city of Philadelphia, for safe keeping:

| | | |
|---|---|---|
| U. S. 5-20 consols, 1865's, 1867's, 1868's, . . . | $15,400 |
| [Here follow the numbers, description and amount of the bonds.] | |
| January, 1874, and after-due coupons attached to all the above bonds. | |
| U. S. 10-40's, Nos. 42, 219, 42,220, 42,221 ($100 each), | 300 |
| | $15,700 |

March, 1874, and after-due coupons attached, valued at $15,700, for which the sum of $15.70 had been paid to this company.

*In Consideration Whereof*, The said deposit is to be safely kept by this company for the period of one year, and on the expiration

[Shakespeare *v.* Fidelity, &c., Co.]

thereof, or sooner, if demanded by the said depositor, it shall be returned to him in good order, upon the surrender of this certificate and the identification of depositor, if required. In case of loss of deposit, the option is reserved to the company of either paying for it at the above valuation, or replacing it in kind and amount.

*This certificate* is not transferable, except by assignment endorsed thereon, and approved by the company. If the whole or any part of this deposit shall be withdrawn before the expiration of said period, no portion of the charge shall be returned, and if continued longer, it shall be deemed a renewal of the deposit on same terms, for which a like rate shall be chargeable.

JAS. W. HAZLEHURST,<br>For Treasurer

Registered H.

This certificate must be surrendered on the withdrawal of the deposit.

ENDORSED.

Received, Philadelphia, December 28th, 1874, of the Fidelity Insurance, Trust and Safe Deposit Company, the within deposit.

RANSOM ROGERS,<br>Executor of J. B. Ackley, deceased.

Mr. Ackley received two other certificates, precisely similar in form to the above, for other bonds deposited. All these bonds, at the time of his death, were in the possession of the defendants.

The testator, by his will, gave, inter alia, to his widow, "the third of my property as the law provides, or if she prefers it, I give to her, while she remains my widow, the interest on all bonds that I possess."

Rogers, immediately after his qualification as executor, learned from Mrs. Ackley that these bonds were deposited in the Fidelity Company, and obtained from her the certificates of deposit for them, which she had in her possession, and gave her a receipt for them. He presented the certificates, together with the letters testamentary, granted to him in New Jersey, and a certificate from the surrogate that he was the duly authorized executor, whereupon the bonds with the coupons were handed over to him by the defendants, and he gave to the company the receipt endorsed on the certificates. The bonds and coupons were then taken by Rogers to New Jersey, where they were appraised and entered in the inventory of the decedent's estate, filed by Rogers in the surrogate's office in Burlington. Rogers, subsequently, in 1875, sold the bonds and misappropriated the proceeds. No notice was given to the defendant by Mrs. Ackley not to deliver the bonds to Rogers.

Mrs. Ackley and family subsequently removed to Philadelphia, and on November 14th 1878, letters of administration *d. b. n. c. t. a.*

[Shakespeare *v.* Fidelity, &c., Co.]

were granted upon the decedent's estate by the register of wills of Philadelphia county, to James H. Shakespeare, the plaintiff, the widow having renounced her right in his favor.

No creditors of the estate in Pennsylvania had ever appeared, and no debts, so far as known, remained unpaid.

The court directed the verdict to be entered for the plaintiff subject to the opinion of the court upon the following point reserved, viz. : Is the plaintiff entitled to recover upon the facts found by the special verdict?

Verdict for the plaintiff for $19,000. Subsequently on June 23d 1880, the court entered judgment for the defendant on the point reserved. No opinion was filed. The plaintiff took this writ of error, assigning for error the entry of judgment for defendant on the point reserved.

*Pierce Archer*, for the plaintiff in error.—Under the statute law of Pennsylvania, as well as by common law, a foreign executor has no title to sue for or intermeddle with the estate of his testator situate within this Commonwealth, and the defendants who had possession of these bonds, under a bailment for safe-keeping, for hire, are responsible for giving them up to one without title. The Act of 1705, which gave validity to foreign letters testamentary, was repealed by the Act of 1832, which prohibited foreign executors from intermeddling with assets here. Since then enabling acts have made exceptions as to certain public securities, but they do not cover United States bonds. The policy of our law is not to permit any part of decedents' estates to be removed without administration here: Alfonso's Executors' Appeal, 20 P. F. Smith 347 ; Moore *v.* Fields, 6 Wright 473 ; Sayre *v.* Helme, 11 P. F. Smith 299, 301 ; Reeside *v.* Reeside, 6 Phila. R. 507 ; Appeal of Lehigh Coal & Navigation Co., 7 Norris 499. The position of Rogers was that of an executor *de son tort*, whose every representative act in this state was void. His receipt was valueless : Roumfort *v.* McAlarney, 1 Norris 197. The uniform course of decisions since the Act of 1832, has been that the assets here can only be distributed by our Orphans' Court, upon an account filed by an executor or administrator of the *situs*, and that all acts without a local administration are void : Dent's Appeal, 10 Harris 514 ; Bingham's Appeal, 14 P. F. Smith 345 ; Freeman's Appeal, 18 Id. 151 ; Van Dyke's Appeal, 31 Leg. Int. 69 ; Parker's Appeal, 11 P. F. Smith 478 ; Stokely's Estate, 7 Harris 476. The Act of 1832 enacts that foreign letters testamentary shall not confer *any* of the powers possessed by an executor under letters granted within this state. This negatives the right to receive a voluntary payment, as well as the right to sue : Scott on the Intestate Law 35. There is no distinction between government bonds and other evidences of property found within the state so far as administration

[Shakespeare v. Fidelity, &c., Co.]

is concerned: Strode v. Commonwealth, 2 P. F. Smith 181; Reading Railroad Co. v. Pennsylvania, 15 Wallace 284. The will created a trust of the bonds for the widow and children, of which the bailees were bound to take notice, and reasonable care would have required them to give notice to the widow. For their negligence in disregarding both the law and the trust in the will the defendants are liable in trover or case: Safe Deposit Co. v. Pollock, 4 Norris 391; Neiler v. Kelley, 19 P. F. Smith 405.

*A. Sydney Biddle* and *George W. Biddle,* for the defendants in error.—By the general common law a foreign executor cannot sue for assets in another jurisdiction without taking out letters there, and giving security. But his title is recognised to receive a voluntary payment, and to give a valid acquittance therefor, provided no ancillary letters have previously been granted. The payment being voluntary, the executor has not "intermedled": Wilkins v. Ellett, 9 Wall. 740; Wharton Conflict of Laws, 2d ed., sect. 626. The Act of 1832 repealed the Act of 1705, and restored the common law. The sole duty of an ancillary administrator is, after paying domestic creditors, to pay over the assets to the executor of the domicile. In this case there were no domestic creditors, and the bailees did directly what would have resulted indirectly if they had paid an ancillary administrator. Mrs. Ackley's security would have been no greater, because Rogers, being domiciled here, could have obtained ancillary letters without giving security. Therefore, even if the delivery to Rogers was a technical conversion, it was *damnum absque injuria,* and the measure of damages is nominal: Hutchins v. State Bank, 12 Metc. 421.

But United States bonds are not assets "within this Commonwealth;" they are not suable anywhere. They could not be attached here as "goods, chattels and credits of the decedent within this Commonwealth." Neither could they have been collected by an ancillary administrator, c. t. a., as "such goods, chattels, and credits." The government was the debtor, and the *situs* of the debt, if anywhere, was at Washington. The *situs* of the *evidence* of the debt is nothing. The bonds may have been anywhere within the United States. State laws cannot restrict the transferability of United States securities.

Apart from any question of administration, Rogers could have sued for the bonds in his own name, as the holder of the certificates of deposit, or he could have assigned the certificates to a third person who could have sued: Moore v. Fields, 6 Wright 467.

Chief Justice SHARSWOOD delivered the opinion of the court, March 7th 1881.

This case has been very ably and elaborately argued, and all the authorities examined and commented on. We do not, however

1 OUTERBRIDGE—12

deem it necessary to discuss the several questions presented. The main contention of the plaintiff in error is grounded upon the provision of the sixth section of the Act of March 15th 1832 (Pamph. L. 136), that "no letters testamentary, or of administration or otherwise, purporting to authorize any person to intermeddle with the estate of a decedent, which may be granted out of this Commonwealth, shall confer upon such person any of the powers and authorities possessed by an executor or administrator under letters granted within this state." In speaking of this act Mr. Justice WOODWARD remarked in Moore *v.* Fields, 6 Wright 471: "This section of the Act of 1832, suggested to the minds of the codifiers by what was said in McCullough *v.* Young, 1 Binn. 63, was merely declaratory of the common law, according to which the title of executors and administrators cannot *de jure* extend beyond the territory of the government which grants it, and the movable property therein." It has been earnestly maintained that upon the proper construction of the statute the foreign executor or administrator not only cannot sue in the courts of this state, for any of the debts or assets of the decedent, which certainly must be conceded to be settled; but that he cannot receive or give a valid acquittance upon a voluntary payment or delivery, even where it does not appear that there are any domestic claimants upon the estate. The current of authorities, where the rule of our statute is recognised as the common law, does not sustain this position: Williams *v.* Storrs, 6 Johns. Ch. 357; Parsons *v.* Lyman, 20 New York 112; Klein *v.* French, 57 Miss. 667; Wilkins *v.* Ellett, 9 Wall. 740. The point has never been decided in this state. We do not think it necessary to decide it in this case.

. There is another point which, we think, disposes of the question upon this record. We do not consider that the United States coupon bonds which are the subjects of this controversy, were at the time of the death of the decedent, any part of his estate in this Commonwealth. The defendants were the mere depositaries of the bonds for safe-keeping. They were, therefore, in the possession of the decedent. He held the certificate of their deposit. The defendants were bound to restore the bonds at any time to the lawful holder of the certificate. It was as if the bonds had been placed in a fire-proof of the defendants, of which the decedent possessed the key. In point of fact, the certificate was in the actual possession of the widow of the decedent in New Jersey. She surrendered it as she was bound to do, to the foreign executor. She could not have withheld it. The New Jersey executor could have sued her, and compelled its delivery to him. The Pennsylvania administrator certainly could not. By the terms of the certificate it might be transferred by assignment indorsed thereon and approved by the company. The foreign executor could have so assigned it, and his assignee could have sued for the delivery of the bonds, in his own

[Shakespeare *v.* Fidelity, &c., Co.]

name. The assignment would have been a sale of the bonds, which were payable to bearer, and passed by delivery. Whoever showed a legal title to the certificate had a right to the possession of the bonds. The case, then, is within the principle of *Moore v. Fields, supra,* where it was held that, where a debt fixed by a decree or judgment of the court of another state in favor of a foreign administrator, is due by citizens of Pennsylvania to the estate of a decedent, the administrator of the foreign domicile may sue for and recover it in his own name.

Judgment affirmed.